HAROLD K. ALLEN & another *vs.* THOMAS H. KILPATRICK
& another.

Hampden.　　September 17, 1931. — December 1, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, WAIT, SANDERSON,
& FIELD, JJ.

*Landlord and Tenant*, Construction of lease, Termination of tenancy,
Eviction. *Evidence*, Presumptions and burden of proof. *Waiver.*
*Practice, Civil*, Waiver of defence, Exceptions, Brief before Supreme
Judicial Court.

A lease of premises containing a house of eight or nine rooms, a cottage
of six or seven rooms, and a barn and sheds provided that "in case the
premises, or any part thereof during said term, be destroyed or dam-
aged by fire or other unavoidable casualty, so that the same shall be
thereby rendered unfit for use and habitation, then, and in such case,
the rent hereinbefore reserved . . . shall be suspended or abated until
the said premises shall have been put in proper condition for use and
habitation by the said Lessors, or these presents shall thereby be de-
termined and ended at the election of the said Lessors or their legal
representatives." During the term the cottage was completely de-
stroyed by fire. The lessors thereafter sent the lessee a notice that
they exercised their election to terminate the tenancy. In an action
for eviction by the lessee against the lessors, it was *held*, that

(1) The burden of proving justification for terminating the tenancy
was on the defendants;

(2) The lease permitted the defendants to terminate the tenancy if
only a part of the premises were rendered unfit for use and habitation
by fire;

(3) The cottage was a "part" of the leased premises within the
meaning of the provisions of the lease above quoted, and, having been
completely destroyed, was rendered unfit for use and habitation;

(4) As a matter of law, the burden resting upon the defendants of
proving justification for terminating the tenancy was sustained.

Where no question of pleading was raised or passed upon at the trial of
an action in the Superior Court, the question of the sufficiency of the
declaration to present a certain issue was not open to the defendant
in this court upon exceptions to the refusal by the trial judge to rule
that the evidence did not warrant a finding for the plaintiff on that
issue.

There was further evidence at the trial above described that, before
the fire, the plaintiff had sublet the premises to one who was in oc-
cupation at the time of the fire and who "remained there during the
balance of the period"; that, shortly after the fire, the defendants

agreed that the plaintiff should "go on and do business as before," if he would pay certain rent, which he thereupon did pay; and that thereafter the defendants refused to accept rent, stating that they had. terminated the tenancy by the notice and notified the plaintiff to "keep off the premises." There was no evidence that the plaintiff was actually expelled by the defendants from the whole or any part of the premises or that in consequence of any act of the defendants the plaintiff abandoned possession thereof. The plaintiff contended that he was entitled to recover on the ground that the defendants had waived their right to terminate the tenancy. *Held*, that, even if the defendants' agreement that the plaintiff could "go on" placed the parties in the same position as they would have been in had the notice not been given, the evidence did not warrant a finding that the defendants had evicted the plaintiff.

A statement by the defendants in their brief at the argument of exceptions in the action above described, that they "admit that they exercised their 'election' to terminate the lease under its fire provision, gave notice thereof to [the] plaintiff, entered into possession of the premises described in the lease, and thereby evicted the plaintiff," and that "If there was a waiver of the notice . . . then there was no eviction" meant that the defendants conceded merely that the exercise of their election to terminate the tenancy, if not warranted by the terms of the lease, constituted an eviction and not that there was an eviction after waiver by them of their right to terminate the lease or of their rights under the notice.

CONTRACT OR TORT. Writ dated October 18, 1927.

The action was tried in the Superior Court before *Macleod*, J. Material evidence is stated in the opinion. The judge denied a motion by the defendants that a verdict be ordered in their favor and refused the following rulings requested by them:

"1. That a part of the demised premises, to wit, a dwelling house, containing six or seven rooms, having been destroyed by fire, the defendants had the right to terminate the lease under the provisions therefor contained in said lease.

"2. That the termination of the lease by the defendant was a lawful and legal proceeding on the part of the defendants.

"3. That the plaintiffs have offered no sufficient evidence, as a matter of law, to warrant the court in submitting to the jury the question of whether a waiver of the notice of cancellation was made by the defendants.

"4. That all the evidence offered in support of the waiver by the defendants as claimed by the plaintiffs is not sufficient

in law to warrant the submission of the question of waiver to the jury."

There was a verdict for the plaintiffs in the sum of $1,000. The defendants alleged exceptions.

The case was submitted on briefs at the sitting of the court in September, 1931, and afterwards was submitted on briefs to all the Justices.

*W. A. Davenport*, for the defendants.

*T. H. Kirkland*, for the plaintiffs.

FIELD, J.   This is an action of contract or tort to recover damages for the eviction of the plaintiffs from premises leased to them by the original defendants, Kilpatrick and Lockhart.   (Upon suggestion of the death of the defendant Lockhart the administratrix of his estate was joined as a party defendant.)   There was a verdict for the plaintiffs. The case is here on the defendants' exceptions to the denial of their motion for a directed verdict and to the refusal of the trial judge to rule as requested by them.   The bill of exceptions states that it contains "all the material evidence having any bearing in the determination of these exceptions."

There was a written lease for a term of five years beginning August 15, 1924, reserving rent payable monthly in advance on the fifteenth of each month and containing a provision that "in case the premises, or any part thereof during said term, be destroyed or damaged by fire or other unavoidable casualty, so that the same shall be thereby rendered unfit for use and habitation, then, and in such case, the rent hereinbefore reserved, or a just and proportional part thereof, according to the nature and extent of the injuries sustained, shall be suspended or abated until the said premises shall nave been put in proper condition for use and habitation by the said Lessors, or these presents shall thereby be determined and ended at the election of the said Lessors or their legal representatives."

The lessors on or about April 30, 1927, mailed to the plaintiffs a notice, signed by them, by which they purported, in accordance with the terms of the lease, to exercise their election to terminate the tenancy thereunder on account

of the destruction by fire on April 26, 1927, of a cottage on the leased premises. This notice was received by the plaintiffs on or about May 2, 1927. The lessors intended thereby to terminate the tenancy.

The plaintiffs contend, in substance, that they are entitled to recover (a) on the ground that termination of the tenancy was not warranted by the terms of the lease, and (b) on the ground of "waiver."

1. The plaintiffs are not entitled to recover on the ground that termination of the tenancy was not warranted by the terms of the lease.

The burden of proving justification of termination of the tenancy was on the defendants. *Clayton* v. *Perry*, 276 Mass. 12. As matter of law this burden was sustained. One of the plaintiffs testified without contradiction that the buildings on the leased premises consisted of a house of eight or nine rooms, a cottage of six or seven rooms, and a barn and sheds, and that the cottage was completely destroyed by fire. This evidence required the finding that the cottage was a "part" of the premises and "by fire" was "rendered unfit for use and habitation." These facts justified termination of the tenancy. See *Norris Drug Co.* v. *Gainsboro Building Corp.* 260 Mass. 117, 119. The lease is not to be interpreted as permitting such termination only when the whole premises were rendered unfit for use and habitation. The condition upon which the tenancy might be determined, unlike that considered in *Clayton* v. *Perry*, 276 Mass. 12, was the same as the condition upon which rent reserved might be abated. Clearly the lease authorized abatement of rent if "any part" of the premises was "rendered unfit for use and habitation" because destroyed or damaged by fire. Since the cottage constituted a substantial part of the premises leased we need not consider the effect of destruction or damage of any lesser part of the premises. The case differs from *D. A. Schulte, Inc.* v. *American Realty Corp.* 256 Mass. 258, where no "part" of the premises was damaged or destroyed so as to be unfit for use and occupation. Unlike the building in that case, this cottage could not have been restored by ordinary re-

pairs without unreasonable interruption of the lessees' use of it. See page 262.

2. The plaintiffs are not entitled to recover on the ground of any "waiver," so called, by the defendants.

The defendants contend that recovery on the ground of waiver cannot be had under the declaration. But no question of pleading appears to have been raised or passed upon in the trial court and, therefore, no such question is open here for the purpose of reversing rulings there made. *Ridenour* v. *H. C. Dexter Chair Co.* 209 Mass. 70, 78. *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379, 384. Compare *Brasslavsky* v. *Boston Elevated Railway,* 250 Mass. 403, 404.

There was evidence that "about a week after the fire" the lessor Lockhart and his wife "agreed" with the plaintiffs that if they "would pay the month's rent overdue and the rent for the following month, beginning April 15, 1927, the plaintiffs could 'go on and do business as before,'" and that these payments were then made, and also evidence that to some extent Mrs. Lockhart was the agent of the lessor Kilpatrick. Even if Mrs. Lockhart was authorized to act in the matter for the lessor Kilpatrick, the evidence did not warrant a finding that the agreement was made before receipt by the plaintiffs of the written notice of the lessors' election to terminate the tenancy.

We think it unnecessary to consider the legal effect of such an agreement, entered into after receipt by the plaintiffs of the written notice of election to terminate, for, even if we make the assumption most favorable to the plaintiffs that by reason of such agreement they were placed in the same position as if the lessors had not sent such written notice or the plaintiffs received it, the plaintiffs' case fails, as contended by the defendants, for lack of evidence of eviction.

There was no evidence that the plaintiffs were actually expelled by the lessors from the whole or any part of the premises or that in consequence of any act of the lessors the plaintiffs abandoned possession thereof. See *Greater Boston Bowling Alleys, Inc.* v. *Olympia Theatres, Inc.* 255 Mass.

477, 479–480, and cases cited. According to the testimony of one of the plaintiffs, in the spring of 1926 the premises were leased to "people who remained there during the balance of the period," and these "people" were in occupation at the time of the fire. Despite anything in the record, these sublessees may have continued in possession of the premises, under lease from the plaintiffs, until the expiration of the plaintiffs' term. Evidence that the plaintiffs on May 14, 1927, sent to the lessors a money order for the rent due in advance from May 15, 1927, and that this money order was returned by the lessors with a letter stating that the plaintiffs on "the 2d day of May . . . were notified by the lessors that they exercised the option to terminate, and did terminate the lease," and notifying them to "keep off the premises," and that the agent of the lessors "always refused . . . to take any moneys later tendered by [the] plaintiffs on account of rent," without proof of actual expulsion or of abandonment of possession, does not show eviction.

The case above considered is the case made by the bill of exceptions. The defendants, however, in their brief, state that they "admit that they exercised their 'election' to terminate the lease under its fire provision, gave notice thereof to [the] plaintiffs, entered into possession of the premises described in the lease, and thereby evicted the plaintiffs," though they argue that "If there was a waiver of the notice of April 30, 1927, then there was no eviction . . . ." Construing these statements together we are of opinion that the defendants concede merely that the exercise by the lessors of their election to terminate the tenancy, if not warranted by the terms of the lease, constituted an eviction. It does not amount to a concession, essential to recovery in this action, that there was an eviction after waiver by the lessors of their right to terminate the lease or of their rights under the written notice of election to terminate such lease.

Some of the justices think that on the record and arguments there was an eviction by the defendants and also that the defendants might have been found to be barred

by waiver on their part, and the contrary opinion on these points is by a majority only of the court.

We are of opinion also that judgment ought not to be ordered for the defendants under G. L. c. 231, § 122, but that the rights of the parties can be better ascertained and protected by a new trial. *Archer* v. *Eldredge*, 204 Mass. 323, 327.

*Exceptions sustained.*